21-1993-cv
*Velozny v. Velozny*

UNITED STATES COURT OF APPEALS
FOR THE SECOND CIRCUIT

**SUMMARY ORDER**

**RULINGS BY SUMMARY ORDER DO NOT HAVE PRECEDENTIAL EFFECT. CITATION TO A SUMMARY ORDER FILED ON OR AFTER JANUARY 1, 2007, IS PERMITTED AND IS GOVERNED BY FEDERAL RULE OF APPELLATE PROCEDURE 32.1 AND THIS COURT'S LOCAL RULE 32.1.1. WHEN CITING A SUMMARY ORDER IN A DOCUMENT FILED WITH THIS COURT, A PARTY MUST CITE EITHER THE FEDERAL APPENDIX OR AN ELECTRONIC DATABASE (WITH THE NOTATION "SUMMARY ORDER"). A PARTY CITING A SUMMARY ORDER MUST SERVE A COPY OF IT ON ANY PARTY NOT REPRESENTED BY COUNSEL.**

At a stated term of the United States Court of Appeals for the Second Circuit, held at the Thurgood Marshall United States Courthouse, 40 Foley Square, in the City of New York, on the 29th day of November, two thousand twenty-one.

PRESENT:     GUIDO CALABRESI,
             DENNY CHIN,
             WILLIAM J. NARDINI,
                      *Circuit Judges*.

_____

NIR VELOZNY, on behalf of the minor child R.V., N.V., and E.V.,

     *Petitioner-Appellee*,

     v.                                    No. 21-1993-cv

TAL VELOZNY,

     *Respondent-Appellant*.

_____

For Petitioner-Appellee:          Marisa Marinelli, Qian (Sheila) Shen, Stosh M. Silivos, Holland & Knight LLP, New York, NY

For Respondent-Appellant:          Richard Min, Burger Green & Min LLP, New York, NY

On appeal from the United States District Court for the Southern District of New York (Daniels, *J.*).

**UPON DUE CONSIDERATION, IT IS HEREBY ORDERED, ADJUDGED, AND DECREED** that the judgment of the district court, entered following a written ruling granting petitioner's motion for summary judgment on July 22, 2021, is **AFFIRMED**.

Respondent-Appellant Tal Velozny ("Ms. Velozny") appeals from a judgment of the United States District Court for the Southern District of New York, granting Petitioner-Appellee Nir Velozny's ("Mr. Velozny") motion for summary judgment and petition to return the children R.V., N.V., and E.V. to Israel under the Hague Convention on the Civil Aspects of International Child Abduction, Oct. 25, 1980, 19 I.L.M. 1501 (1980) ("Hague Convention"), and the International Child Abduction Remedies Act, 22 U.S.C. § 9001, *et seq.* ("ICARA"). Ms. Velozny timely appealed and filed an emergency motion for a stay pending appeal; we denied the motion to stay on October 13, 2021. We assume the reader's familiarity with the record.

We note that the issues on appeal are narrow. Ms. Velozny does not contest the district court's order to the extent that it found that Mr. Velozny's petition set out a *prima facie* case for the return of the children to Israel under the Hague Convention. Thus, because the parties do not dispute that the "removal was wrongful, the child[ren] *must be returned* unless [Ms. Velozny] can establish one of four defenses." *Blondin v. Dubois*, 189 F.3d 240, 245 (2d Cir. 1999) ("*Blondin II*"). To that end, Ms. Velozny challenges the district court's order and judgment to the extent that it declined to apply one of those affirmative defenses, *i.e.*, the grave risk of harm exception, as well as the district court's discretionary decision declining to apply the mature child exception. Ms. Velozny also challenges the district court's use of expedited proceedings and its decision limiting Ms. Velozny's ability to submit certain evidence.

As an initial matter, the district court did not err in holding expedited proceedings or in declining to hear testimony from certain witnesses or interview the elder two children *in camera*. Rather, its decision to hear two days of live testimony to supplement the evidence filed along with the summary judgment papers was "[i]n keeping with the [Hague] Convention's explicit emphasis on expeditious judicial resolution." *Blondin II*, 189 F.3d at 243 (citing Hague Convention, art. 11 ("The judicial or administrative authorities of Contracting States shall act expeditiously in proceedings for the return of children.")); *see also* Hague Convention, art. 2 (mandating that courts "shall use the most expeditious procedures available").

Here, the district court declined to interview R.V. and N.V. *in camera* because both parties filed affidavits from their experts based on extensive interviews with both children, among other evidence. As the district court explained,

> I am hesitant to put the children through [*in camera* interviews] after having gone through hours and hours with the psychologist. . . . I don't see that there is any

significant additional evidence that would be determinative of this case given the complete examination done by the experts and their full reports on these issues. . . . [G]iven what I have heard, I am not convinced that [the children] could say any additional statements other than the statements that they have made to the professionals that would be determinative of the issues that are before the Court.

App'x at 835–38. In addition, the district court properly declined to hear additional live testimony as duplicative or immaterial to the disposition of the case.

The district court also did not err in its analysis of the grave risk of harm and mature child defenses. The grave risk of harm exception derives from Article 13(b) of the Hague Convention and applies where "[the child's] return would expose the child to physical or psychological harm or otherwise place the child in an intolerable situation." *Blondin II*, 189 F.3d at 245. A respondent invoking the exception bears the burden to establish it by "clear and convincing evidence." *Id.*; 22 U.S.C. § 9003(e)(2)(A). This exception must be applied narrowly to avoid "frustrat[ing] a paramount purpose of [the Hague Convention]—namely, to 'preserve the status quo and to deter parents from crossing international boundaries in search of a more sympathetic court.'" *Blondin II*, 189 F.3d at 246 (quoting *Friedrich v. Friedrich*, 983 F.2d 1396, 1400 (6th Cir. 1993)). We have explained that

> at one end of the spectrum are those situations where repatriation might cause inconvenience or hardship, eliminate certain educational or economic opportunities, or not comport with the child's preferences; at the other end of the spectrum are those situations in which the child faces a real risk of being hurt, physically or psychologically, as a result of repatriation. The former do not constitute a grave risk of harm under Article 13(b); the latter do.

*Blondin v. Dubois*, 238 F.3d 153, 162 (2d Cir. 2001) ("*Blondin IV*"). Before declining to repatriate a child based on the grave risk exception, "it is important that a court considering [such] an exception under Article 13(b) take into account any ameliorative measures (by the parents and by the authorities of the state having jurisdiction over the question of custody) that can reduce whatever risk might otherwise be associated with a child's repatriation." *Blondin II*, 189 F.3d at 248.

The district court properly found that the grave risk exception did not apply based on the undisputed facts. As the district court pointed out, "as late as August 26, 2019, approximately one month before her removal of the children, [Ms. Velozny] was willing to let her children travel unaccompanied to Israel twice a year and be alone with their father." App'x at 974. In addition, the district court properly found that the undisputed facts with respect to the alleged risks from exposure to spousal abuse, physical or emotional abuse of the children, and petitioner's drug use did not warrant application of the grave risk exception. The district court also considered potential ameliorative measures, noting that (1) Ms. Velozny "has not established that an Israeli court could

3

not provide adequate protection for the children during any divorce or custody proceedings," App'x at 974–75, and (2) "the effect of this decision is only to order the return of the children to Israel," App'x at 975. The district court expressly noted the undisputed fact that "[t]he children and [Ms. Velozny] are not required . . . to live with [Mr. Velozny] again, and the parties are free to devise their own living and custody arrangements or seek the intervention of an Israeli court." App'x at 975. Thus, the district court did not err in finding that the grave risk of harm exception did not apply.

The mature child exception derives from an unnumbered provision in Article 13 of the Hague Convention and provides a separate defense to repatriation that a respondent must establish by a preponderance of the evidence. 22 U.S.C. § 9003(e)(2)(B); *Blondin IV*, 238 F.3d at 166. "[U]nder this provision, a court *may* refuse repatriation solely on the basis of a considered objection to returning by a sufficiently mature child." *Blondin IV*, 238 F.3d 166 (emphasis added).

The district court did not err in declining to apply the mature child exception. First, the district court noted that the parties agreed that E.V., the youngest, was too young to have her views considered. Then, after discussing R.V.'s and N.V.'s opinions on returning to Israel, the district court found that R.V. only preferred to stay in the United States (but did not object to returning to Israel) and N.V.'s statements may have constituted an objection to returning to Israel. The district court then stated that, even assuming both R.V. and N.V. were mature enough to have their views considered and that N.V.'s view constituted an objection within the meaning of Article 13, it would still decline to apply the mature child exception in order to keep all three children together. Such a decision falls well within the district court's discretion in Hague Convention proceedings. *See Blondin IV*, 238 F.3d at 166.

We have reviewed Ms. Velozny's remaining arguments and conclude that they are without merit. For the foregoing reasons, the order of the district court is **AFFIRMED**.

FOR THE COURT:
Catherine O'Hagan Wolfe, Clerk of Court

4